**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FRANO IVEZAJ,

                 *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

         *Defendant.*

_____/

CASE NO. 2:19-cv-12886

DISTRICT JUDGE DENISE PAGE HOOD

MAGISTRATE JUDGE PATRICIA T. MORRIS

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 12, 15)</u>**

I.     **<u>RECOMMENDATION</u>**

In light of the entire record in this case, I suggest that substantial evidence supports Defendant Commissioner of Social Security's determination that Plaintiff is not under a disability within the meaning of the Social Security Act. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 12), be **DENIED**, and the Commissioner's Motion, (ECF No. 15), be **GRANTED**.

II.     **<u>REPORT</u>**

    **A.**     **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, the present case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Disability Insurance Benefits (DIB). (ECF No. 3.) This case is before the Court upon the parties' cross-motions for summary judgment. (ECF No. 12, 15.)

1

Plaintiff filed an application for DIB on March 9, 2015, alleging that his disability began on September 11, 2014. (ECF No. 9-5, PageID.262.) The Commissioner denied the claim. (ECF No. 9-4, PageID.188.) Plaintiff requested a hearing before an ALJ on August 25, 2015, (*Id*. at PageID.192), and a hearing was held on May 30, 2018.[1] (ECF No. 9-2, PageID.80.) The ALJ issued a decision on July 5, 2018, finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (*Id.* at PageID.45-55.)

The Appeals Council denied review of the ALJ's decision, (*Id.* at PageID.31), and Plaintiff subsequently filed a complaint seeking judicial review of the ALJ's final decision on October 3, 2019. (ECF No. 1.) He then filed the present Motion for Summary Judgment on January 13, 2020, (ECF No. 12), after which the Commissioner countered with its own Motion on April 24, 2020. (ECF No. 15.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

---

[1] A hearing was also held in 2016, but that hearing did not contain the testimony of a vocational expert. I refer to the 2018 hearing as it provides a more complete and comprehensive view of this case, including testimony from several experts.

to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the

3

duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other

jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 9-2, PageID.55.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 11, 2014. (*Id.* at PageID.42.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: alcohol abuse/dependence, major depressive disorder, an anxiety disorder, and a back disorder. (*Id.*) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (*Id.* at PageID.42-43.) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> medium work as defined in 20 CFR 404.1567(c) except no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; no more than occasional contact with supervisors, coworkers, and the public; and limited to simple and routine tasks in an environment with only occasional changes to tasks and routines.

(*Id.* at PageID.45.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (*Id.* at PageID.53.) At step five, the ALJ found that Plaintiff has at least a high school education, that transferability of job skills is not material to the determination of disability because the medical-vocational rules support a finding that he is not disabled, and that jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at PageID.54.) This finding relied on the testimony of the Vocational Expert (VE) about potential positions including that of cleaner, DOT code number 389.683-010

(1,200,000 jobs in the national economy), material handler, DOT code 579.687-018 (500,000 jobs), and assembler, DOT code 806.684-010 (1,000,000 jobs), all of which are unskilled jobs with an SVP of 1 or 2. (*Id*. at PageID.54-55.)

### E.    Administrative Hearing

#### 1.   Plaintiff's Testimony

At the hearing held on May 30, 2018, Plaintiff testified that he last worked in 2014. (ECF No. 9-2, PageID.80.) He worked for Detroit Public Schools until 2012; in 2011, he was demoted from assistant superintendent to teacher. (*Id*. at PageID.81.) Plaintiff testified that after his demotion, he was suicidal. (*Id*. at PageID.82.) He began seeing a psychologist, identified at the hearing as Ralph Schillace, Ph. D., in 2012, and testified that he meets with Schillace "sometimes once every other week. Sometimes once a month." (*Id*. at PageID.83.) He saw Schillace usually one or two times a month but sometimes more frequently. (*Id*. at PageID.83-84.) However, later in the hearing, Plaintiff clarified that he does not see Schillace on any regularly scheduled basis, and sees him approximately once a month: the ALJ summarized the somewhat "fuzzy" testimony on this issue as "[i]t appears that [Plaintiff] sees [Schillace] when he's feeling bad, and that when he's not feeling bad, he doesn't see him." (*Id*. at PageID.115-116.) Plaintiff also claimed to experience post-traumatic stress disorder (PTSD). (*Id*. at PageID.84.) At the date of the hearing, he stated that his mental state was "the same" as it was six years ago. (*Id*.)

The ALJ questioned Plaintiff about his drinking habits. Plaintiff testified that he drinks beer and vodka and considers four or five beers or half a pint of vodka to be "too much" for him. (*Id*. at PageID.85-86.) He considered drinking to offer him "a brief sigh of

relief" from his mental state. (*Id*. at PageID.86.) He stated that he does not drink when he is taking medication, including his sleeping pills or antidepressant. (*Id*.)

Finally, Plaintiff testified to suffering from problems with his back for the previous four to five years. (*Id*. at PageID.117-118.) He testified that he cannot sit for "too long," he must change positions, and he cannot lift "heavy things." (*Id*. at PageID.118.) Although the ALJ asked for evidence from a treater for the back pain, Plaintiff could provide only evidence from a consultative examination that provided "chronic, persistent low back pain, with right radiculopathy, secondary to degenerative disk disease, and lower lumber spine range of motion in the lumbar spine is decreased." (*Id*. at PageID.119-120.)

### 2.  Medical Expert Testimony

The ALJ questioned the medical expert, Nicole Martinez, Psy.D.. (*Id*. at PageID.87.) She testified that she was familiar with how to evaluate mental impairments under the guidelines provided in 20 CFR sections 404.1520a and 416.920a. (*Id*. at PageID.88.) She had not personally examined Plaintiff or served as a medical expert for the Social Security Administration for Plaintiff. (*Id*.) However she believed there was enough objective medical evidence that allowed her to form an opinion about Plaintiff's impairments. (*Id*.) Martinez testified that based on the evidence, and in her opinion, Plaintiff's impairments could be categorized as follows: a mild impairment concerning understanding, remembering, and applying information; a moderate impairment concerning interacting with others; a moderate impairment concerning concentration, persistence, or maintaining pace; and a moderate impairment concerning adapting or managing himself. (*Id*. at PageID.90.) Martinez testified that the evidence in the record did not suggest that any of

Plaintiff's impairments met or medically equaled the criteria in the relevant listing of impairments. (*Id*.) She also noted that although she did not consider Plaintiff's use of alcohol as part of her analysis and testimony, if Plaintiff was actively using alcohol, it would have an impact both in a work setting and on the effectiveness of his medication. (*Id*. at PageID.91-92.)

On cross examination, Martinez noted that "[t]here is not quantifiable treatment notes. There is not ongoing[,] six years truly[,] of missing records to base it on." (*Id*. at PageID.93.) Martinez pointed out that under the "APA Ethics Code" and the "Licensing Board Ethics Code," "[i]t is required to keep session notes, documented session notes[.] I'm confused by [Schillace] not keeping therapy notes for years." (*Id*. at PageID.104.) She testified that therapy notes would normally include "overall objective assessment progress of a session . . . it can be brief, but it's a summary of what is going on in that session, the progress that's going on, . . . so you can see an encapsulation of that moment in time, and its required [by the APA and for licensing]." (*Id*. at PageID.104-105.) The ALJ asked, "[i]f a treater has multiple patients with similar diagnoses, are there any problems that might arise during course of treatment of an individual patient?" Martinez replied, "[w]ell, yes. If you don't keep notes, it becomes very difficult to keep track of the individual issues . . . [y]ou can't keep track of minor details, important issues that are reported to you if you're not keeping session notes." (*Id*. at PageID.107-108.)

### 3.  Testimony of Plaintiff's Psychologist

Plaintiff's counsel questioned Schillace. (*Id*. at PageID.93-94.) Schillace confirmed Plaintiff's prior statements that they had sessions more frequently "in the beginning" and

less so in "the last couple years." (*Id*. at PageID.95.) Schillace admitted that he "somewhat, and not always, and not usually" kept written notes of their therapy sessions. (*Id*.) He testified that Plaintiff's "working diagnoses" at that time were "PTSD, chronic, and major depressive disorder." (*Id*.) Schillace testified that the PTSD criterion require that an injury occurred, and is typically a physical injury; he opined that in Plaintiff's case his demotion constitutes a "serious emotional injury" and resulted in him "reliving [] the original injurious event, as well as emotional irregularity, lack of emotional control, avoidance of all situations that are associated with that original injury, and some other signs[.]" (*Id*. at PageID.96.) Schillace testified that a work environment similar to Plaintiff's previous one would "be cue for the injury and the fear, and attack on his sense of value, sense of worth, his competence, and his integrity." (*Id*. at PageID.98.) Schillace did not believe Plaintiff's alcohol use was a "serious problem." (*Id*. at PageID.99.) The ALJ also questioned Schillace, (*Id*. at PageID.100), and clarified that he treated two or three patients with PTSD out of 15 or 20 patients that sees in a week. (*Id*.)

### 4. The VE's Testimony

The ALJ asked the VE to consider whether a hypothetical individual who "[has an RFC of medium], but limited to no climbing ladders, ropes, or scaffolds, only occasionally able to climb ramps or stairs, stoop, kneel, crouch or crawl" could perform Plaintiff's past work. (*Id*. at PageID.122.) The VE testified that they could perform past work, including positions such as assistant superintendent, principal, assistant principal, and teacher. (*Id*.) The ALJ asked whether an individual with further limitations, such as being "limited to no more than occasional contact with supervisors, coworkers, and the public," would be able

to perform that past work. (*Id.*) The VE testified that they could not perform any of the previous past work. (*Id.* at PageID.123.) The VE further stated that Plaintiff would have some transferable skills, including "general clerical skills, computer literacy, and business math." (*Id.*) The VE provided that, at the light work level, Plaintiff could perform jobs such as general office clerk (700,000 jobs), accounting clerk (185,000 jobs), or file clerk (200,000 jobs) with such transferable skills. (*Id.*)

The ALJ asked the VE to consider a hypothetical person, of Plaintiff's age and education, with no past work and an RFC of medium, who was

> Unable to climb ladders, ropes, or scaffolds, [] only occasionally able to climb ramps or stairs, stoop, kneel, or crouch, or crawl, and limited to no more than occasional contact with supervisors, coworkers, and the public, and as well, limited to simple and routine tasks in an environment with only occasional changes in tasks and routines.

(*Id.* at PageID.123-124.) The VE responded that such an individual could perform jobs such as cleaner, SVP 2, DOT code 389.683-101 (1,200,000 jobs), material handler, SVP 2, DOT code 579.687-018 (500,000 jobs), or assembler, SVP 1 and 2, DOT code 806.684-010 (1,000,000 jobs). (*Id.* at PageID.124.)

The ALJ asked whether a hypothetical individual who would be off task 10% of the time, in addition to normal breaks, or who would miss one day of work per month for medical reasons, would still be eligible for those positions. The VE testified that they would. (*Id.*) The VE testified that there were no conflicts between her testimony and the DOT. (*Id.* at PageID.131.)

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[2] carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. 20 C.F.R. § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still

---

[2]  Various amendments have been made to the regulations since Plaintiff filed his claim.  *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Miller v. Comm'r of Soc. Sec.*, No. 1:17CV0718, 2018 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating

opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3]

---

[3] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1

(July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R.§ 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G.    Arguments and Analysis

Throughout his Motion, Plaintiff advances three arguments against the ALJ's holding: 1) the medical evidence does not support the finding of a medium work RFC; 2) the ALJ failed to give proper weight to Schillace and Adrian Valle, M.D.; and 3) the ALJ failed to pose complete and accurate hypothetical questions to the VE. Plaintiff argues that all these erroneous holdings lack the support of substantial evidence. (ECF No. 12, PageID.600.) I address each argument in tun.

#### 1.    Medium work designation

First, Plaintiff argues that the ALJ inappropriately categorized Plaintiff's RFC as medium work, which is defined by 20 C.F.R. § 404.1567(c):

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light

work.

Plaintiff argues that he testified to back pain and limitation in lifting and sitting. (ECF No. 12, PageID.627.) He also refers to tests that he claims support a reduced range of motion of the lumbar spine and degenerative joint disease. (*Id*.) Plaintiff argues that although he provided a statement that he mows the lawn and uses a snowblower, "[s]uch a statement provides no insight into the type of lawn mower [push mower, power mower, riding lawn mower, etc.] that was used. There is no information about how often claimant mows the lawn and contains no information about how large the lawn is." (*Id*. at PageID.628-629.)

The ALJ considered the evidence upon which Plaintiff relies, referring to a 2015 consultative examination at which Plaintiff complained of pain (rated 10 out of 10) that radiated to the lower right extremity. (*Id*. at PageID.46.) The ALJ noted "[Plaintiff] claims he had a CT scan and MRI and was told there was narrowing of the disc in the lower lumbar spine; however, there are no records of this in the evidence." (*Id*.) Indeed, my own review of the record evidence does not reveal a CT scan or MRI. In the examination report, Nicole Huby, Ph. D., makes note of an x-ray of Plaintiff's back which showed "reduced ROM of LS spine[,]" but ultimately concluded that "his gait was normal." (ECF No. 9-3, PageID.179.) Thus, the ALJ concluded that "[t]he only indication of back problems is contained in the consultative examination report in April 2015 (5F). That examination revealed normal gait with no sensory or motor deficits. (5F/2). Additionally, the claimant was able to sit and stand and had no difficulty walking or getting on and off the examination table (5F/2-6). He was able to bend and stoop 60% and squat 70%. He had full range of

16

motion throughout the body except reduced flexion and extension in the lumbar spine and hips (5F/4)." (*Id*. at PageID.46-47.)

The ALJ did note Plaintiff's use of a lawn mower and a snowblower; however, the ALJ does not rely solely upon this information in making its decision—in fact, the ALJ precedes the use of such equipment by saying "*[i]n addition to* the overly normal findings[. . . .]" (*Id*. at PageID.47) (emphasis added.) Whether or not the record contained the details of Plaintiff's use of such equipment, the ALJ only noted this fact as a consideration in addition to the comprehensive analysis of Plaintiff's consultative examination and records of his back pain. (*See e.g.*, *id*. at PageID.46-47.)

Finally, the ALJ gave great weight to the consultant Twaide Langham, D.O., "who opined in June 2015 that the claimant could perform medium work with postural limitations (1A)." (*Id*.) Indeed, in an examination report, Langham reported that Plaintiff had a normal gait, could bend/stoop at 60% and squat at 70%, and would be able to sit for six hours of an eight-hour workday. (ECF No. 9-3, PageID.181.)

The ALJ did not err in relying upon the medical evidence in the record rather than Plaintiff's statements of pain and claims of test results— a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a).

But the ALJ still acknowledged Plaintiff's back issue as severe; the ALJ found, based on the record medical evidence and the testimony of the VE, that Plaintiff had the RFC to perform a "restricted range of medium exertional work." (ECF No. 9-2, PageID.53.) The ALJ did properly consider Plaintiff's impairments and appropriately

added additional restrictions to the RFC. The ALJ's conclusion was supported by substantial evidence in the record, or, "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. Thus, I suggest that this argument fails and the ALJ has not erred in designating Plaintiff's RFC as medium work.

### 2.   Weight assigned to the opinions of Drs. Schillace and Valle

Plaintiff argues that the ALJ failed to give proper weight to Schillace and Valle by assigning both of their opinions little weight. (ECF No. 12, PageID.616-617.) Plaintiff argues that he should "not be penalized by his treating psychologist's lack of treatment notes" and that "[t]here is no support for the ALJ's supposition that [] Schillace was not able to accurately describe his patient's signs and symptoms due to confusion with other patient's symptoms." (*Id*. at PageID.618.) In sum, Plaintiff argues that "[] Schillace's list of marked limitations preclude the satisfactory performance of work in a competitive setting and demonstrate that [P]laintiff's medical condition meets the requirements of listing 12.04. None of [] Schillace's list of marked limitations were included in the ALJ's assessment of the paragraph B requirements for the listing." (*Id*. at PageID.621.) Plaintiff also disputes the designation of little weight given to the opinion of Valle, a psychiatrist who completed interrogatories on December 9, 2016 in this case. (*Id*. at PageID.622.) Plaintiff points out that Valle "opined that [Plaintiff] met listing 12.04 and met listing 12.06 since 2012." (*Id*.)

During the pendency of Plaintiff's claim new mental health listings came into effect as of January 17, 2017. The new "B" criteria assess an individual's ability to: 1) understand,

remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. SSA listings 12.04 and 12.06 are at issue here. Both require the claimant to meet various "A criteria" and either "B criteria" or "C criteria. While the A criteria differ for each listing, the B and C criteria are identical. 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, §§ 12.04, 12.06 (Jan. 2017). To meet a listing under the "B" criteria, the following is required:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> 1. Understand, remember, or apply information
>
> 2. Interact with others
>
> 3. Concentrate, persist, or maintain pace
>
> 4. Adapt or manage oneself

20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.04B (Jan. 2017). "Extreme limitation" means an inability to "function in [an] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2)(e) (Jan. 2017). A "marked limitation" is one in which the claimant's ability to function in an area "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2)(d) (Jan. 2017). A "moderate limitation," by contrast, leaves the claimant with "fair" functioning "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2)(c) (Jan. 2017).

The four specific B criteria "areas" are also defined. First, "[u]nderstand,

remember, or apply information.... refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(1) (Jan. 2017). Second, "[i]nteract with others ... refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2) (Jan. 2017). Third, "[c]oncentrate, persist, or maintain pace ... refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(3) (Jan. 2017). Fourth, "[a]dapt or manage oneself ... refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(4) (Jan. 2017).

As Defendant points out, "[t]he Social Security Administration's Revised Medical Criteria for Evaluating Mental Disorders states that SSA will use the final rules 'on and after their effective date, in any case in which we make a determination or decision.' *See* Social Security Administration's Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, *available* at 2016 WL 5341732 at *66138 and n.1." (ECF No. 15, PageID.662, n. 6.)

The record evidence was mostly contrary to the opinion of Schillace, who suggested Plaintiff had marked limitations in several areas of functioning. The ALJ pointed to, and assigned great weight to, the opinions of Drs. James Wargel, Ph. D., John Conley, M.D., Huby, and Martinez, and partial weight to Terrance Mills, Ph. D., in contrast to Schillace's opinion. (ECF No. 9-2, PageID.50-52.)

While Schillace had a doctor-patient relationship with Plaintiff, the objective

opinions of other reviewing and testifying doctors cannot be ignored. The ALJ relied on the opinion of Martinez, who testified at the hearing and concluded "there was nothing in the evidence to prevent sustained work because the claimant had only mild limitation with understanding/memory and moderate limitation with interacting with others, concentration, persistence, or pace, and adaption/managing himself." (*Id.* at PageID.50.)

The ALJ also pointed out the reviewing documents of Huby, who "opined that the claimant had moderate difficulty with concentration, persistence, or pace and was limited to simple, unskilled work with only mild limitation with social functioning even with alcohol abuse being nonsevere." (*Id.*) Wargel and Conely made similar findings, concluding that Plaintiff had "only mild limitation with simple instruction and decision . . . with interacting with the public . . ." and "moderate limitation with concentration, persistence, or pace and maintaining social functioning." (*Id.* at PageID.51-52.)

In addition, while Schillace opined that Plaintiff suffered from PTSD and treated him for such an ailment for several years, the other experts disagreed: Conley, for example, referred to that conclusion as "an incorrect diagnosis of PTSD" and notes "therapy continues to address a disorder that the claimant does NOT suffer from, i.e., PTSD, in spite of no positive response to that treatment"(ECF No. 9-7, PageID.557, 562); Wargel refers to the PTSD diagnosis as "poorly supported." (*Id.* at PageID.530.)

Many of these examining opinions relied on the consultative examination. This examination reported that Plaintiff had an appropriate rapport with the examiner and got along well with the clinic staff. (ECF No. 9-7, PageID.450.) It stated that he was in contact with reality, oriented, cooperative, and had an appropriate manner. He exhibited fair insight

and problem-solving skills and adequate eye contact. (*Id.* at PageID.451.) The examiner concluded that Plaintiff suffered from major depressive disorder, generalized anxiety disorder, and alcohol use disorder, (*Id.* at PageID.452), and that he "was not noted to have difficulty carrying out one-step instruction but would occasionally lose focus and concentration . . ." and "[h]is ability to respond appropriately to changes in work routines and to maintain standards of safety issues would be a concern, based on his current mental health status." (*Id.*)

While the ALJ must consider the "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship," as with Schillace, it must also consider the "supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Despite Schillace's opinions of Plaintiff's mental state and ability to work, the great weight of the evidence and the record as a whole supported the ALJ's conclusion.

Further undermining Schillace's opinion is that fact that he did not have any documented evidence of his own. The hearing revealed that Schillace failed to take notes during the several years he saw Plaintiff (at sporadic intervals, it appears). The ALJ expressed concern that while Schillace believed Plaintiff to suffer from PTSD, he saw approximately three other patients on a weekly basis who also suffered from PTSD; it is possible, the ALJ speculated, that Schillace may have superimposed the treatment and symptoms of those other patients onto Plaintiff. Without any treatment or session notes, we simply cannot be sure, and a conclusion either way would be purely speculative.

Regarding Valle and the weight assigned to his opinion, the ALJ concluded that

Valle's opinion "was based on the now rescinded B criteria, which no longer contains separate prongs for activities of daily living and episodes of decompensation." (ECF No. 9-2, PageID.51.) Valle suggested that Plaintiff had marked limitations in two areas. (ECF No. 9-7, PageID.510.) But the ALJ found that the remaining analysis of Valle did not provide a "basis for meeting a listing." (*Id*.) Specifically, "[t]he remaining limitations of marked difficulties with interacting appropriately with coworkers, supervisors, and the public are not only inconsistent with the mental health treatment records (or lack thereof), those limitations alone would not establish a basis for meeting a mental health listing under the new regulations." (*Id*.) The ALJ concluded that, based on the "use of the rescinded B criteria analysis and lack of findings to support marked functional limitation with any activities[,]" the ALJ assigned little weight to Valle's opinion. (*Id*.) In contrast, the ALJ gave great weight to the opinions of both Drs. Wargel and Conley, who updated their opinions with the new B criteria as provided in the regulations. (*See* ECF No. 9-2, PageID.51-52.) To the extent that Plaintiff now seeks remand for an updated opinion by Valle, the Sixth Circuit has noted the higher burden for updates: "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a [time] gap exists does not warrant the expense and delay of a judicial remand." *Id*. (citation omitted); *see also Harper v. Comm'r of Soc. Sec*., No. 15-CV-13971, 2017 WL 2242510, at *4 (E.D. Mich. May 23, 2017) ("Sixth Circuit precedent places a more onerous burden on the Plaintiff to show the need for an updated medical expert opinion."). I suggest that any update to Valle's opinion would not meet this standard as there are several updated opinions in this case and, in any event, it is unlikely that an updated opinion by Valle would

render the ALJ's decision "untenable."

Upon review of the medical evidence in the record, the ALJ provided "good reasons" for the weight assigned to Schillace's and Valle's opinions. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub*, 482 F.3d at 875. Therefore, I suggest that this argument fails and that the ALJ has not erred. Giving appropriate weight to the respective treating sources, and to all of the evidence in the record, I suggest that the ALJ's conclusion was supported by substantial evidence, or, "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. The substantial-evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way'"; thus, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted).

### 3.  Questions posed to the VE

Next, Plaintiff argues that ALJ failed to pose proper and complete questions to the VE regarding Plaintiff's designated medium work RFC. (ECF No. 12, PageID.630-633.) Plaintiff points out that the RFC finding "must be stated as a function-by-function assessment of claimant's maximum ability to do work related physical and mental activities." (*Id*. at PageID.630 (citing SSR 96-8p.)) Plaintiff then concedes that the ALJ made such findings—"[d]espite finding that claimant had moderate limitations in all four areas of the B criteria [understanding, remembering or applying information; interacting

with others; concentrating, persisting, and maintain pace and adapting or managing himself][,]" Plaintiff ultimately argues that "the ALJ's limitation to simple routine tasks fails to take into account his moderate limitations with regard to concentrating, persisting, or maintaining pace and moderate limitation in adapting or managing himself." Plaintiff submits that "the ALJ did not provide the VE with any meaningful description of how long the claimant could maintain concentration and did not provide the VE with any meaningful description of whether claimant could persist on a job or maintain the pace of a job." (*Id.* at PageID.630-631.)

Defendant refers to *Gilbert v. Comm'r of Social Security*, No 15-cv-11325, 2016 WL 8114195, at *5 (E.D. Mich. Apr. 29, 2016) (citation omitted) (rec. dec. *adopted* Aug. 1, 2016) in support of their position that the ALJ appropriately discussed and considered work-related functions with the VE. (ECF No. 15, PageID.671.) I find *Gilbert* to be persuasive.

In *Gilbert*, this Court considered the plaintiff's argument that the "ALJ improperly gave great weight to the opinion of Dr. Hugh Bray, a consultative examiner, where Dr. Bray did not address all of the work-related functions set forth in SSR 96-8p and SSR 85-15, including Plaintiff's ability to 'use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting.'" *Gilbert*, 2016 WL 8114195, at *5. This Court held: "The Court has repeatedly held that an ALJ need not address every possible work-related function." *Id.* (citing *Sumner, v. Comm'r of Soc. Sec.*, No. 13-14303 (Nov. 3, 2014)). In *Gilbert*, this Court further held:

[plaintiff] argues that the ALJ should have considered her ability to use judgment in the workplace, respond to work situations and co-workers, and deal with changes in the work setting .... As Defendant notes in its brief, Sixth Circuit precedent clearly establishes that '[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.' *Delgado v. Comm'r of Soc. Sec.*, 30 F. App's 542, 547 (6th Cir. 2002) (quotation omitted). Furthermore, an ALJ is not required to include in her RFC assessment any limitations which she does not find credible. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Sumner*, 2014 WL 6809891 at *9.

*Gilbert*, 2016 WL 8114195, at *5 (citing *Johnson v. Comm'r of Soc. Sec.*, No. 14-14713 at 21022 (E.D. Mich. Sept. 18, 2015).

I suggest that the same is true here. Plaintiff argues that the ALJ failed to properly question the VE by not describing or inquiring about a "meaningful description" of how long Plaintiff could maintain concentration or pace at a job. Plaintiff does not define what he believes a "meaningful description" would entail. At the hearing held on May 30, 2018, the ALJ posed a hypothetical individual to the VE who be "limited to simple and routine tasks in an environment with only occasional changes in tasks and routines[,]" and who "would be off take 10% of the time in addition to normal breaks[.]" (ECF No. 9-2, PageID.124.) In its written opinion, the ALJ analyzed the 12.04 listing "paragraph B" criteria over several paragraphs and included examples from and citations to Plaintiff's examination. (ECF No. 9-2, PageID.44.) The ALJ cited to the observations and opinions of Drs. Martinez, Huby, Wargel, and Conley throughout the decision. The RFC prescribed by the ALJ, including its limitations to simple and routine tasks in an environment with occasional changes in tasks and routines, adequality accounts for the moderate limitations Plaintiff was deemed to have under the relevant paragraph B criteria. The law "in this

26

Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 625, 635 (6th Cir. 2016).

The ALJ did appropriately and thoroughly question regarding Plaintiff's workplace limitations. Further, my review of the record suggests substantial evidence to support that decision. *Rogers*, 486 F.3d at 241. I suggest that this argument fails and the that ALJ has not erred.

### H.    Conclusion

For these reasons, I conclude that substantial evidence does support the ALJ's decision. Consequently, I recommend **DENYING** Plaintiff's Motion, (ECF No. 12), and **GRANTING** the Commissioner's Motion. (ECF No. 15).

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 27, 2021                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge